Wood, Judge.
The declaration in this case contains the common money counts in indebitatus assumpsit, and to which the defendant plead the general issue of nonassumpsit.
The cause was submitted to the court on the circuit in the county of Muskingum, and reserved here to determine the law upon an agreed statement of the facts submitted by the counsel.
From this agreed statement, the substantial facts in the case appear to be these: On the twenty-third day of May, 1837, the plaintiff, a contractor on the public works upon the Muskingum River, in company with two other contractors, entered into an agreement with the defendant, as follows :
“ We agree, if the bank of Muskingum will take a loan from the state of Ohio, to be applied to carry on the public improvement at Zanesville, and the dam near the mouth of Symmes’ Creek, in which we have contracts, that we will allow the said bank a commission of five per cent, on the amount of said loan, to be paid by each of us, on the respective amounts applied to each of our contracts ; the loan to be of such amount as the bank may he able to obtain, not exceeding fifty thousand dollars. The said Manypenny agrees to take at least seventeen thousand dollars; and if there should be no money in the hands of the fund commissioners, applicable to the dam near the mouth of Symmes’ Creek, the said Hosmer agrees to take the amount that may be sufficient to complete the said contract; should there be money 545] in the hands of the fund commissioners, ^applicable to said work, said Hosmer is not bound to take any of said loan. The money is to *546 be paid to said parties by the bank,, on the cheeks of the acting commissioner of the board of public works, in current bank paper.
Signed, Josiah Spaulding,
G-. W. Manypennt,
S. R. Hosmer.”
This contract being entered into, Stiirges, the Cashier, as the agent of the bank, made a written proposal to the fund commissioners to purchase of them, on behalf of the bank, fifty thousand dollars of the six per cent, stock, redeemable at the pleasure of the state after the yeor'1856, the interest payable semi-annually in New York, where the principal should also be redeemed. The amount to be placed to the credit of said commissioners, at once, on the books of the bank, and to be paid on the authorized cheeks of the acting commissioner of the board of Public Works, to the contractors, at Zanesville, and the contractors, at the dam, between Zanesville and Dresden. This proposition was made expressly with a view of enabling these contractors to go on with their work, and thereby prevent the great loss to themselves and the public, which the suspension of the work would occasion, and an early decision was desired, as expressed in the letter of the cashier.
The fund commissioners accepted this proposition, and on the 31st of May, 1837, they gave the bank the scrip certificate for $50,000, and in lieu thereof a stock certificate was issued for the same amount in October following.
This $50,000 was placed to the credit of the board, as proposed, on the books of the bank, and the acting commissioner of the board of Public Works, between the 26th of June and 31st of December, 1837, drew, checks in favor of the plaintiff for money due in favor of the plaintiff, as such contractor, upon the bank, on the said fund so deposited, in bank, for the gross amount of $27,542.78. The bank paid to the plaintiff on these cheeks the gross sum of $26,165.65, and retained, with the consent of the plaintiff, in pursuance of the agreement of *the 23d of May, the gross sum of $1,377.13, being five per [54@ cent, on the amount of the acting commissioner’s checks in favor of the plaintiff. The whole amount of $50,000 was not paid to the three contractors ; but $10,000 applied elsewhere. Hosmer required no part of the $50,000. The bank paid all the checks presented by the plaintiff, with the deduction of the five per cent., and a further amount beyond what was s» paid on the plaintiff’s checks, remained due him for work under his contract.
If, on these facts, the court shall be of the opinion the plaintiff is *547 entitled to recover the five per cent, so retained by the bank, then it is agreed jndgment shall be entered in his favor for $1,377.13, with interest from the 31st of December, 1837, and costs of suit; otherwise judgment is to be entered for the defendant.
The facts agreed upon, and upon which this case must exclusively be determined by us, would seem to place the defendant in no very enviable position. Whatever pretence may be set up to retain the amount in controversy, as commissions in the sums allowed, it is very clear it is one of those illegal shifts and devices to which the inordinate money -lender resorts to acquire to himself gains by an evasion of the wholesome provisions of the laws of the state, and it is much to be regretted that such efforts are but too frequently successful.
This corporation, the defendant, is prohibited by the charter which gave it birth, and not only so, but by a general law, from receiving more than six per cent, upon its loans or discounts ; though, it is true, this amount may be reserved in advance, yet no one can doubt for a moment, that this five per cent., covered up under the name of “ commissions,” is, substantially, interest on this large amount of $50,000, placed to the credit of the fund commissioners, and on which, or the scrip, or stock in lieu thereof, the bank was to receive six per eent., semi-annually, in the city of New York, and on which interest she will not fail to avail herself also of the difference in exchange.
*This fund being created upon her books, it is worthy of inquiry what services she renders to entitle her to five per cent, upon it, in the name of commissions ? It would be difficult to give the answer. Instead of advancing the $50,000 at once, she keeps it in her possession and receives her interest until it is checked out in small sums to-contractors.
This may be considered “ a fair business transaction,” under the modern system of banking; but formerly, so far as I am acquainted, these institutions were glad to avail themselves of large deposits, and' for the accomodation to themselves, would pay them out without any other reward. But it is said this was a voluntary arrangement between the parties. Such appears to be the fact, from the agreed ease, and by which, as was said in the outset, we must decide this case; and it would also appear, from the agreed case, the plaintiffs, Manypenny and Hosmer, applied, first, to the bank to make this arrangement, both for the loan and the five per cent, commission. Other papers, however, accompanying the record, show that on the 17th of May the fund commissioners addressed a circular to the bank, proposing to take this- *548 loan, and that the arrangement with the plaintiff was on the 23d. Of this proposition of the commissioners, the plaintiff had no knowledge from any evidence before us. The plaintiff and others were contractors ; the state was, doubtless, in their debt, for it appears from one of' the papers in the cause, that the commissioners had not funds to make farther advances, and had refused; and I strongly suspect the period between the 17th and 23d of May, was used by the bank in mousing-out the condition of the contractors, and obtaining the agreement for this five per cent., called commission. I say called commission, though it is clear to my mind that it was only another name for interest, and a mere device, whereby to evade the law; and while it may succeed in retaining this interest, for which it has done no act, and run no risk, it is due that the facts should be exposed, as they, from the evidence, doubtless exist. If, then, this five per cent, is substantially interest, the bank had clearly no right to receive it. It is an act malum prohibitum, and if *the bank was seeking to recover it, it would [548 not receive the aid of this court. It is, however, a part of the agreed statement that the money being in the hands of the bank, the plaintiff when, from time to time, he presented his checks, consented to this deduction of five per cent. This being so, and the consideration being illegal, the plaintiff appears to us to be particeps criminis. He-is injpari delicto with the bank, and while the law will not enforce an executory contract, but leave the parties as it finds them in such case so, neither will it aid the party who has performed such contract, by enabling him to recover back the amount he has paid, but the maxim, volenti non jit injuria, applies in all its force. There is, perhaps, no principle on which there is less conflict of authority from the earliest to the most modern reports. Roll v. Raguet, 4 Ohio, 418 ; Raguet v. Roll, 7 Ohio, part I., 78 ; Chit. Con. 219 ; Stone v. Hooker, 9 Cow. 154 ; Moore v. Adams and Newkirk, 8 Ohio, 372. It has been repeatedly held by this court, that where illegal interest is once voluntarily paid, the payer is without remedy.
T. Ewing and H. Stanbery for plaintiff.
R. Stillwell for defendant.
We must, therefore, inevitably come to the conclusion that the plaintiff is not entitled to recover, and judgment will be entered for the defendant.
Judgment for defendant.